1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - -    X

4  UNITED STATES OF AMERICA,    :    07 CR 736

5                               :

6
        -against-              :
7                                    United States Courthouse
                                     Brooklyn, New York
8  NIKOLAI DOZORTSEV,          :

9                                    December 16, 2010
           Defendant.          :     11:55 o'clock a.m.
10
     - - - - - - - - - - - -    X
11

12                TRANSCRIPT OF SENTENCING
            BEFORE THE HONORABLE FREDERIC BLOCK
13          UNITED STATES SENIOR JUDGE

14
   APPEARANCES:
15
   For the Government:          LORETTA E. LYNCH
16                              United States Attorney
                                BY: STEVEN TISCIONE
17                                  EVAN WEITZ
                                Assistant United States Attorneys
18                              271 Cadman Plaza East
                                Brooklyn, New York
19

20   For the Defendant:         ROBERT WOLF, ESQ.
                                BARRY ZONE, ESQ.
21

22   Court Reporter:            Gene Rudolph
                                225 Cadman Plaza East
23                              Brooklyn, New York
                                (718) 613-2538
24
   Proceedings recorded by mechanical stenography, transcript
25 produced by computer-aided transcription.

GR      OCR      CM      CRR      CSR

2

1        THE CLERK:  Criminal cause for sentencing, docket

2   number 07 CR 736, USA versus Nikolai Dorzortsev.

3        THE COURT:  Good morning, everybody.

4        Let's have the appearances, everybody.

5        MR. TISCIONE:  Steven Tiscione for the government.

6        Good morning, Judge.

7        MR. WEITZ:  Evan Weitz for the government, Your

8   Honor.

9        MR. WOLF:  Good morning, Your Honor.

10        Robert Wolf for Nikolai Dorzortsev.

11        MR. ZONE:  Barry Zone for Mr. Dorzortsev as well.

12        THE COURT:  We have two lawyers on each side.

13        Mr. Marshal, you were the only person up here right

14   now?  You have to have somebody else with you, a colleague?

15        THE MARSHAL:  Right here.

16        THE COURT:  There are two of you.  My apologies.

17        I wasn't able to get here until 11:30 because I had

18   another legal matter that I was attending to.

19        What's your excuse for taking 25 minutes to keep

20   everybody waiting since then?

21        THE MARSHAL:  We apologize.

22        THE COURT:  You have manpower problems, womanpower

23   problems?

24        THE MARSHAL:  No, never womanpower problems.  It's

25   more of manpower issues.  We were actually in another court

GR      OCR      CM      CRR      CSR

3

1   that has seven codefendants and not enough manpower to cover

2   that.  That's where we came from.

3           THE COURT:  These things do happen.  The people here

4   are entitled to an explanation.  I kept them waiting for a

5   half hour because of another legal matter that I had to attend

6   to.  Sometimes we have multiple things to do and the marshals

7   have problems also.  I think it is good for the record that we

8   all explain why we keep these people waiting for an hour.

9           THE MARSHAL:  Not a problem.

10          THE COURT:  Okay.  Maybe the government will give

11  you folks more money some day and will also give me a raise

12  some day. Stay tuned. They will probably cut our budgets where

13  everybody gets fired.  We will have to look for new employment

14  and be on the unemployment lines.

15          Anyway, we are prepared to go forward today.

16  Mr. Wolf, are you going to be speaking or is Mr. Zone going to

17  be speaking?

18          MR. WOLF:  Your Honor, I will.

19          THE COURT:  Mr. Tiscione?

20          MR. TISCIONE:  I will be speaking, Your Honor.

21          THE COURT:  All right.  Let me first identify what I

22  have in the file.

23          I take it, Mr. Wolf, your client is prepared to go

24  forward with sentencing and he fully understands the

25  presentence report and everything else you probably

4

1    painstakingly explained to him?

2         MR. WOLF:  Yes, Your Honor.

3         THE COURT:  I put the microphone on so the people

4    could hear me.  We have a lot of people who are, I guess,

5    fans, family, friends of the defendant; right?

6         MR. WOLF:  Your Honor, may I just raise one

7    preliminary matter?

8         THE COURT:  Go ahead.

9         MR. WOLF:  Very quickly.

10        It was unexpected and is not in the submissions.

11   There were two articles in the New York Post this week about

12   this case.

13        THE COURT:  Should I read them?

14        MR. WOLF:  No.

15        I think you've now answered my inquiry.  My inquiry

16   would have been if the Court has read them or not.  If you

17   haven't, there is nothing to discuss.

18        THE COURT:  If you would like me to read them, send

19   them to me.  I read the Post every day to see what they say

20   about Judge Block.

21        MR. WOLF:  Only good things, I'm sure.

22        THE COURT:  Step back.  The microphone gives us

23   feedback.  That's why I do not like the microphones because we

24   always have to make these adjustments.  The reason why I use

25   the microphone is when we have a situation as today, like the

5

1    sketch artists, you have a hard time hearing me sometimes, we

2    want to make sure they hear everything I say.  These good

3    folks in the audience are entitled to hear what goes on.  We

4    should speak up but don't get so close to the microphone that

5    we get this noise.  Okay?

6              Let me tell you what we have.  First, I have this

7    preliminary order of forfeiture.

8              Mr. Wolf, I take it that you have no objection to it

9    being included as part of the judgment here?

10             MR. WOLF:  No objection.

11             THE COURT:  That's taken care of.

12             Then we have the underlying plea agreement.  I am

13   talking about all these papers I have in no necessary order or

14   date.  That was previously marked as Court Exhibit number one

15   back on November 12th of 2008 when the defendant entered into

16   his plea.  It is fairly extensive.  We had a lot of things

17   here that the government had to consider and the defense as

18   well.

19             What came out of the wash here is an estimated range

20   of imprisonment of from 57 to 71 months.

21             Now, in paragraph four the defendant agreed to waive

22   any rights of appeal in respect to his conviction or sentence

23   if the Court imposed a term of imprisonment of 71 months or

24   below.  We will talk about it more.

25             I will just note preliminarily that there is a big

6

1    disagreement between the plea agreement and the government's

2    position here and what the Probation Department's take is.

3    Let's identify what we have on file.  We will talk about that.

4              MR. WOLF:  One other thing with regard to the

5    guidelines estimate in the plea agreement.  It goes further on

6    page four.

7              THE COURT:  Yes.  It says that it could be reduced

8    by another --

9              MR. WOLF:  Another point for global disposition, to

10   51 to 63 months.  That's the stipulated range between the

11   government --

12             THE COURT:  What paragraph is that?

13             MR. WOLF:  Paragraph four of the --

14             THE COURT:  I am looking at paragraph four.

15             MR. WOLF:  I'm sorry.  Page four, paragraph two.  I

16   apologize.

17             THE COURT:  That's in paragraph two?

18             MR. WOLF:  The middle of the paragraph.

19             THE COURT:  Carries an estimated range of

20   imprisonment of 51 to 63, if in fact there was this global

21   plea that we are speaking about.

22             MR. WOLF:  Yes.

23             THE COURT:  Still, curiously enough, that's the

24   estimated range of imprisonment, query whether or not what is

25   said in paragraph four would still apply, that for purposes of

1    appeal it is the 71-month or below.

2              MR. WOLF:  That is correct.

3              THE COURT:  Or below number that applies.  I think

4    that's the way it reads.

5              MR. WOLF:  That is correct.

6              MR. TISCIONE:  That is correct, Your Honor.  That is

7    the way it reads.  That is the way it is meant to read.

8              THE COURT:  Let's continue.  We now have the

9    presentence report which is dated May 20, 2009.  It indicates

10   that the defendant has been in federal custody since

11   April 2, 2009.  I guess that's about a year-and-a-half ago,

12   right?  He was arrested back on October 13, 2007.  So he was

13   at liberty for a while, I guess, before he was remanded to

14   federal custody.  That's because apparently of his criminal

15   activity that happened post bail.

16             MR. TISCIONE:  Yes.

17             THE COURT:  This was all before Judge Sifton.

18             MR. TISCIONE:  Yes.

19             THE COURT:  Then we have the addendum mean to the

20   presentence report, which is dated December 3, 2010.  That's

21   recent.  We are going to be working off of that, I suspect,

22   since there is a different guideline calculation.  Well,

23   actually a different way of coming to the calculation, I

24   should say.

25             I have the Probation Department's recommendation.

8

1  It is my practice to share them with counsel.  I assume that

2  was done in this particular case and you folks have had an

3  opportunity to read the comments of the Probation Department.

4          MR. WOLF:  Yes.

5          MR. TISCIONE:  Yes, Your Honor.

6          THE COURT:  You see that they recommend in respect

7  to Count 17 one hundred forty-four months in custody and in

8  respect to Count Eighteen also one hundred forty-four months

9  of custody concurrent; 17 is one hundred forty-four, 18 is one

10 hundred forty-four concurrent with Count 17, and an additional

11 36 months to run consecutively and that's because of the way

12 the law reads, that there has to be some consecutive

13 sentencing consideration of the so called healthcare fraud, I

14 guess.

15          So you have that.  We will talk about all that in

16 due course.

17          We have the letter from Mr. Wolf of November 23,

18 2010, noting these objections to the presentence report, which

19 are addressed to some extent in the addendum.  So I have that.

20          I have the government's letter of December 7, 2010,

21 which we read carefully, and there the government attaches the

22 advisory guideline range which comes out to 51 to 63 months

23 and says that the plea agreement contemplated an adjusted

24 offense level of 24.  I assume that's the government's

25 position.  We will talk about that.

9

1      And the sentencing memorandum of the defendant, very

2    well prepared, with Exhibits A through T, which the Court has

3    looked at carefully.  Then I just have back an April 8, 2009,

4    modification of conditions of release and I think that

5    substantively is everything I have in the file.  Except I have

6    this December 14, 2010 letter from Mr. Wolf just calling the

7    Court's attention that Mr. Dorzortsev has already served over

8    20 months in prison and he was electronically monitored for

9    18 months with a curfew before.

10       I don't have a copy of the transcript of the plea, I

11    don't think.  I have the plea agreement.  I am looking for the

12    transcript of the plea, which do I not have.

13       Was that before Judge Sifton?

14       MR. WOLF:  It was, Your Honor.

15       THE COURT:  He took the plea?

16       MR. WOLF:  I have one copy.  I may have another.  I

17    don't know if Mr. Tiscione has one.

18       THE COURT:  I just want to make sure because if he

19    didn't take the plea, then we have an open --

20       MR. WOLF:  He did.

21       MR. TISCIONE:  I have a copy of the transcript.

22       THE COURT:  I would like to have that in the file as

23    well.  It was before Judge Sifton.  So I don't have to do

24    anything about that.

25       I would like to look at his allocution.  I am

GR     OCR     CM     CRR     CSR

10

1    looking for his allocution.

2         MR. WOLF:  Your Honor, on page eight it begins.  But

3    I think it would be helpful if you -- on the bottom of page

4    seven, Judge Sifton clarifies the conduct that Mr. Dorzortsev

5    is pleading to and I think that's relevant to the objections

6    as well that Your Honor has received.  So if you start at the

7    bottom of page seven.

8         THE COURT:  Let me take a look at that.

9         (Pause.)

10        He pled guilty, in effect, to illegal trafficking in

11   contraband cigarettes.

12        MR. WOLF:  That is correct, Your Honor.

13        MR. TISCIONE:  Actually, Your Honor, he pled to

14   laundering the proceeds of --

15        THE COURT:  Laundering the proceeds but the

16   underlying criminal activity stemmed from the contraband

17   cigarettes is what he pled to?

18        MR. TISCIONE:  That is correct, Your Honor.

19        THE COURT:  Okay.  Now we have all of that.  Now we

20   can talk about the great disparity between the Probation

21   Department's take on this case as represented in the

22   presentence report and the addendum and the government's

23   position.

24        Mr. Tiscione, I guess my sense of this is that you

25   want to have him sentenced pursuant to the plea agreement and

1  that would be the 53 to 61 range.  Is that basically what we

2  are talking about here?  Because I have to make this

3  calculation and there is a great discrepancy between yours and

4  the Probation Department's.

5          Tell me what's going on here.

6          MR. TISCIONE:  Your Honor, there is a plea

7  agreement.  The government is continuing to adhere to that

8  plea agreement, which contemplate a range of 51 to 63 months.

9          THE COURT:  I am going to take that at faith.  It

10 doesn't have to always be that way.  You can enter into these

11 estimates and it comes out differently at the time of

12 sentencing.  I'm sure Judge Sifton must have cautioned the

13 defendant about that.

14         But, nonetheless, the government's position -- you

15 know better than I do -- is that the right range is 53 to

16 61 months; is that correct?

17         MR. TISCIONE:  That is correct, you Your Honor.

18         The government is going to adhere to that plea

19 agreement.

20         MR. WOLF:  Fifty-one to 63.

21         THE COURT:  Fifty-one to 63.

22         MR. TISCIONE:  That is correct.

23         THE COURT:  Then we have that representation.  Let's

24 see how we make our calculations then.  I guess we should make

25 reference to the underlying plea agreement.  Let me just go

1    back to that.

2             Turn to page four of the addendum to the presentence

3    report.  The base offense level then in respect to Count 17

4    will be eight instead of 30.  Is that correct?

5             MR. TISCIONE:  No, Your Honor.

6             THE COURT:  I am looking at your computation here.

7    I am looking at your letter of December 7, 2010.

8             MR. TISCIONE:  Your Honor, the base offense level as

9    calculated in the PSR also includes the additional enhancement

10   for the amount of funds.  When I set out --

11            THE COURT:  You are not correct in your assessment

12   here.

13            MR. TISCIONE:  No.  I am, Your Honor.  I separated

14   it out into two steps.  The Probation Department in the PSR

15   has it all in one step.

16            So paragraph 61 of the PSR, which says the base

17   offense level -- the base offense level is -- base offense

18   level of eight plus the number of offense levels from the

19   table.

20            THE COURT:  It should be 24.

21            MR. TISCIONE:  So it is 24.

22            THE COURT:  That's what we are going to do.

23            Then we have a 1956 situation so there are two more

24   levels there.

25            MR. TISCIONE:  Yes.

13

1          THE COURT:  We are not involved with narcotics

2     trafficking for purposes of our calculation.  We have a

3     sophisticated means uptick of two levels as part of the

4     equation.  Nobody is taking any issue with these.  So we have

5     a subtotal of 28 here.

6          Then in terms of the Count Eighteen, we agree that

7     the base offense level will be six and then we add eight

8     levels because the loss exceeds $70,000.  So we have an

9     adjusted offense level of 14.  There is no change in the

10    multiple count adjustment.  So we do have a total of 28.

11         MR. TISCIONE:  Actually, Your Honor, there is one

12    difference.  The paragraph 74 in the PSR has an obstruction of

13    justice enhancement under 3147.

14         THE COURT:  We are not applying that.  That's not

15    part of your equation.

16         MR. TISCIONE:  Actually, Your Honor, if you look on

17    page four of my letter, the government's position is that that

18    enhancement does apply.

19         THE COURT:  Let's try to make our calculations.  We

20    are all over the landscape here.  That troubles me.

21         Let's look at the addendum again.

22         MR. TISCIONE:  I should note that at the end of the

23    day it doesn't affect the ultimate guidelines calculation.

24         THE COURT:  The base offense level of paragraph 16

25    is 24.  We have two levels in paragraph 62.  No.  That's not

1    applicable.  We have just two more levels in paragraph 64,

2    which would apply, and we have sophisticated means adjustment,

3    which will have to be placed in, I guess, the adjustment for

4    the role in the offense should be --

5           MR. WOLF:  Your Honor, 64 has the sophisticated

6    means.  I think 63, if you just stopped that the defendant was

7    convicted under 1956, that would be the two levels instead of

8    the four.  Just take out the rest of that characterization.

9           THE COURT:  That's two levels.  All right.  Let's go

10   back again.  Paragraph 61 is 24, paragraph 63 is two,

11   paragraph 64 is two and that's it.

12          MR. WOLF:  That's it.

13          MR. TISCIONE:  Correct.

14          THE COURT:  So we have here an adjusted offense

15   level of 28.  We all agree so far?

16          MR. TISCIONE:  Yes, Your Honor.

17          MR. WOLF:  Yes.

18          THE COURT:  Let's go over to the count of the

19   healthcare fraud.  We have the base offense level of six.  We

20   have an additional eight levels in paragraph 70.  We have no

21   obstruction of justice.  So we have here a -- you do want to

22   argue for obstruction of justice here?  It makes no difference

23   in terms of the final analysis.

24          MR. TISCIONE:  I believe the --

25          THE COURT:  We will put down obstruction of justice

1    three.  All right.  That means we have 19 as the adjusted

2    offense level.  Correct?

3             MR. TISCIONE:  Actually 17, Your Honor.

4             Paragraph 74 has a three-level but paragraph 73

5    should not apply.  So it should be base offense level of six,

6    additional eight levels for the amount.

7             THE COURT:  Fourteen plus three is 17.

8             MR. TISCIONE:  Seventeen.

9             MR. WOLF:  That is right.

10            THE COURT:  The total offense level is not going to

11   be affected.  The adjusted offense level is going to be 28,

12   right?

13            MR. TISCIONE:  Correct.

14            THE COURT:  Now we have an acceptance of

15   responsibility here.

16            MR. TISCIONE:  Yes, Your Honor.

17            THE COURT:  Which is three levels.

18            MR. WOLF:  Yes.

19            MR. TISCIONE:  That is correct.

20            THE COURT:  All right.  That incorporates the global

21   plea scenario as well, right?

22            MR. WOLF:  One more level for global plea.

23            THE COURT:  One more level.

24            MR. TISCIONE:  Yes.  The global is an additional

25   point.

1          THE COURT:  All right.  Plus the global level is an

2   additional one.  So we are talking about a total offense level

3   of 24.

4          Are we all in agreement?

5          MR. TISCIONE:  Yes, Your Honor.

6          MR. WOLF:  Yes, Your Honor.

7          THE COURT:  The criminal history category is one.

8   This does come out to 51 to 63 months.

9          MR. WOLF:  That is right.

10         MR. TISCIONE:  That is correct, Your Honor.

11         THE COURT:  We have come to an agreement and an

12   understanding as to how to calculate the advisory guideline

13   range; correct?

14         MR. TISCIONE:  Yes, Your Honor.

15         MR. WOLF:  Yes, Your Honor.

16         THE COURT:  Now we can deal with, I guess, the most

17   relevant portion of this, since everybody has agreed to what

18   the adjusted offense level would be, and that is the sentence

19   that should be imposed upon the defendant.

20         Mr. Wolf, you can speak now, if you like, in behalf

21   of how I should sentence him.

22         MR. WOLF:  Your Honor, thank you very much.

23         May I just point out just a couple of additional

24   corrections to the presentence report that are agreed upon?

25         One was in, our objections, that Mr. Dorzortsev is

1  in fact a citizen.

2        THE COURT:  They say there is no proof of that.

3        MR. WOLF:  No.  The government has his passport.

4  The government would agree.

5        THE COURT:  He is a citizen?

6        MR. TISCIONE:  He is a citizen.

7        THE COURT:  I was going to ask you whether there

8  should be a deportation provision here.

9        MR. TISCIONE:  He is a naturalized US citizen.

10        MR. WOLF:  The concern is the presentence report

11  goes to the Bureau of Prisons.

12        THE COURT:  It's understood that he's a naturalized

13  citizen.  So I will not order that if he is deported he can't

14  come back to the country illegally.

15        MR. WOLF:  More important, could you --

16        THE COURT:  He got into this country before the

17  government found out he was a criminal, right?

18        MR. WOLF:  Your Honor, could you direct that the

19  presentence report indicates he is a citizen?  Because it is

20  going to go to the Bureau of Prisons.  It may affect his

21  designation, et cetera.

22        THE COURT:  The record indicates he is a citizen.

23  You have a record of these proceedings.

24        MR. WOLF:  Okay.

25        THE COURT:  I would suggest to you that you send the

1    entire transcript to the Bureau of Prisons, to make sure that

2    they know that he is a citizen.

3              MR. WOLF:  Thank you very much, Your Honor.

4              Your Honor, another objection, which is agreed upon,

5    in paragraph 51 and 141.  Again, this is more directed to how

6    the Bureau of Prisons may use or hopefully not abuse the

7    presentence report.  But it indicates inaccurately that two

8    shotguns and seven rifles were seized under Mr. Dorzortsev's

9    beds.  That's not accurate.  It was two shotguns and one

10   rifle, hunting rifles.

11             THE COURT:  Two shotguns and one rifle?

12             MR. WOLF:  Yes; not seven.

13             THE COURT:  He likes to go hunting.

14             MR. WOLF:  Hunting, yes.

15             THE COURT:  Arguably not for human beings.

16             MR. WOLF:  They were hunting and bought in the name

17   of properly --

18             THE COURT:  All right.  Very good.

19             Anything else?

20             MR. WOLF:  Your Honor, I believe that's it.

21             Just a general objection to the extent that the

22   presentence report as it describes the count of conviction is

23   different than as we state it, and more specifically as the

24   government has described.

25             THE COURT:  Why do you have to say that?  We just

1  painstakingly went through the calculations.

2          MR. WOLF:  Fine.

3          THE COURT:  The more important thing is that we have

4  an advisory guideline range.  The presentence report is rife

5  with all sorts of bad things here that we understand, for

6  whatever reasons, the government was willing to not press

7  forward on.

8          We understand a few other things.  That Mr. Fanchini

9  was sentenced by Judge Sifton to ten years of jail; we

10  understand that Mr. Nayfeld was sentenced by Judge Sifton to

11  five years in jail; and that his brother Dorzortsev was given

12  probation but he apparently was a cooperator from what my

13  notes bring out here.

14          Is that correct?  Yes?  It says cooperation.

15          I don't know that his -- his advisory guideline

16  range was 18 to 24.  So for whatever reasons, his involvement,

17  criminal involvement, was much less so than his brother.

18          MR. TISCIONE:  He was a minor participant in this,

19  Your Honor.  I think Your Honor might be confusing --

20          THE COURT:  My notes says he was a cooperator.  That

21  may or may not be the case.  I don't know.

22          Do you know that?

23          MR. WOLF:  My understanding is, that's not accurate.

24          THE COURT:  Okay.  I just would like to make sure

25  that we are on the same page.  But he had an 18 to 24 advisory

20

1  guideline range compared to 51 to 63 here.

2          I point that out because the record should reflect

3  that the Court is obliged to consider comparable conduct by

4  those similarly situated in making an assessment for what the

5  proper sentence ought to be.

6          Having said that, tell me what your view of the law

7  is, Mr. Wolf, in terms of whether I should consider any of

8  these other things that are in this comprehensive presentence

9  report which talks about lots of other things for which he

10  hasn't pled but I will give you that I can consider this under

11  3553(a) at least, right?

12          MR. WOLF:  Your Honor, I would ask --

13          THE COURT:  He was only involved with cigarette

14  smuggling.  That was it?  Counterfeit cigarettes?

15          MR. WOLF:  That's the count, 17 and the Count

16  Eighteen is the --

17          THE COURT:  Otherwise, he's a choir boy, right?

18          MR. WOLF:  Your Honor, as we will certainly concede

19  in what I say and in what Mr. Dorzortsev accepts

20  responsibility for and what he will say to the Court and what

21  he has said to Court in his letter, which is Exhibit T, he

22  stands here before the Court, Your Honor.  He's 45 years old.

23  He stands here and as I often --

24          THE COURT:  Let me go back to the question I want to

25  ask you.  To what extent should I consider any of this

1  information that's set forth in the presentence report which I

2  understand has not triggered his advisory guideline range but,

3  nonetheless, I am obliged to consider his personal

4  characteristics as well as the nature of the underlying crime

5  and how that may relate to 3553(a).  How do I go about doing

6  that in the face of all these pretty serious things that are

7  set forth in the underlying presentence report?  That's my

8  focused question for each of you to answer.

9          I will ask the government first.

10          MR. TISCIONE:  Your Honor, under 3553, I believe you

11  are obliged to consider all relevant facts.

12          THE COURT:  I don't know what's relevant.  If it is

13  contested, how do I come to a determination?  A Fatico

14  hearing?

15          MR. TISCIONE:  What I would say, Your Honor, the

16  government is not pursuing a Fatico hearing at this time to

17  prove up any of the additional allegations beyond what --

18          THE COURT:  I am not going to consider them.  I am

19  just taking my cues from the government.

20          You are not concerned about any of this other stuff

21  at all that's in the presentence report?  Right, Mr. Tiscione?

22  The cocaine situation, all of this involvement with the

23  Fanchini gang and stuff like that and this international type

24  of activity by this terrible person, right?

25          Maybe I should sentence him below the advisory

1  guideline range if the government is not concerned about these

2  other criminal activities.

3           MR. TISCIONE:  Your Honor, the government is

4  certainly concerned about all of his activities and I believe

5  the international aspect is included within the --

6           THE COURT:  What don't I know about this case that I

7  should know?  I have this very, very damning presentence

8  report and I have a passive position on the part of the

9  government.  How do I resolve those two sort of different

10  scenarios?

11           MR. TISCIONE:  The --

12           THE COURT:  I am the one who has to sentence him.

13           MR. TISCIONE:  Your Honor, there were certain

14  considerations with respect to resolving this case.

15           THE COURT:  Little secrets out there that I don't

16  know about, right?

17           MR. TISCIONE:  Sorry?

18           THE COURT:  Little secrets out there that I don't

19  know about, right?

20           MR. TISCIONE:  I wouldn't say secrets.  I simply

21  believe that there are a lot of considerations that went into

22  resolve this case against all of the defendants, not just this

23  defendant.

24           THE COURT:  Okay.  That's fine.  You can say what

25  you want.

23

1          Let me tell you my view of this.  I am going to go

2     from 51 to 63.  I am not going to consider anything else

3     because the government is not pressing it at all.  I don't

4     have any real comfortable foundation factually to consider

5     anything else.

6          He has lots of support from the community which

7     suggests that there should be a below guidelines range here.

8     What do you think about that?  I have all these wonderful

9     letters and people are supporting him.  Public officials speak

10    well of him.  He seems to be an upstanding member of the

11    community.  He just had this one minor thing involving money

12    laundering for cigarettes.  What's the big deal?

13          MR. TISCIONE:  Your Honor, I believe that -- number

14    one, I don't consider form letters from politicians concerning

15    his family, not even necessarily him specifically, has really

16    any bearing on the sentencing.

17          THE COURT:  They speak well of him.  I guess I

18    should identify --

19          MR. TISCIONE:  They speak well of his father.  They

20    don't say anything about this defendant.

21          THE COURT:  That's true to some extent.  His father

22    apparently is a good guy but he is not being sentenced today.

23    I am just giving you an opportunity to chime in to help me

24    figure out how to sentence him.

25          MR. TISCIONE:  Your Honor, the government's position

24

1   is that the defendant was given an extremely generous plea

2   offer as a way to dispose of this case with numerous

3   defendants that would have taken a six-month trial and cost

4   the government an enormous amount of money since 99 percent of

5   the evidence and witnesses were overseas.  It spanned several

6   continents.  It would have been an absolute nightmare to try

7   the case.

8           In light of that fact, the government entered into a

9   global plea disposition with all of the defendants to what the

10  government considers to be extremely generous plea offers and

11  I think even the defendant would have to knowledge that

12  considering the charges he faced the government's plea offer

13  was extremely generous in this case.  I think under those

14  circumstances, Your Honor, I believe that any sentence below

15  the guideline range would be inappropriate in this case.

16          THE COURT:  Now you spoke up.

17          Mr. Wolf,  what do you say?  Why should I sentence

18  him to a term of imprisonment less than the guideline range

19  here?  It seems like he's getting away with an awful lot as a

20  practically matter.

21          MR. WOLF:  I have not asked in my papers nor do I

22  ask today for a sentence below the low end of that guideline

23  range, the 51 months.

24          THE COURT:  I just want to get this all out.

25          MR. WOLF:  I have submitted my papers.  As we all

1    know, the Court is free to do what the Court will do.  But I

2    am not asking as counsel for Mr. Dorzortsev --

3                THE COURT:  I get the sense.

4                Is there anything else you wish to say?

5                MR. WOLF:  Your Honor, I do.

6                I think Your Honor has pointed out what -- I have

7    sat and I have read every single letter in this presentence

8    report and, Your Honor, I share with the Court, I know the

9    Dorzortsev family and I have known them for 15 years or so,

10   from a business standpoint, legal standpoint -- not a criminal

11   legal standpoint -- and then a social standpoint.

12               The letters accurately reflect who they are and

13   accurately reflect, of course, that it stems from the father,

14   Eugene Dorzortsev, and his family is in court, Your Honor.

15   His father Eugene, his mother Lorissa, his wife Irina, his

16   brother Arthur, numerous other friends are here and friends of

17   the family to support him, his oldest son Julien.  The other

18   children are not of the age that was responsible to bring them

19   to court, and they are 15 and 12.

20               This is getting right to it, Your Honor.  He's

21   45 years old.  He stands here really as a failure in front of

22   all these people.  I think the letters impressively

23   demonstrate one side of Mr. Dorzortsev, which is that he has

24   these redeeming qualities that the community and members of

25   the community have recognized personally, charitable,

1  philanthropic, helpful in the community, helpful with the

2  business, helpful with the father, very, very impressive.

3         I don't want that to take away as we stand here

4  today that he accepts full responsibility for the other side

5  of his life that's brought him here today.  And, Your Honor, I

6  always like to find as we get older -- and now I am 52, he's

7  45 -- the good that can come out of a situation and the

8  recognition of the importance of today.  There is

9  recognition --

10         THE COURT:  You know one of the things that troubles

11  me, I see people coming to this country from different

12  countries, I don't care whether it's Russia or China or

13  wherever, and they take the oath to be good citizens and they

14  are criminals and they commit crimes after that.  It's

15  terribly, terribly disturbing in terms of his personal

16  characteristics that he's a person of that criminal mindset.

17  To become a citizen, to take the oath to say that you would

18  obey the laws of the United States and then commit crimes is

19  just shocking.

20         MR. WOLF:  Your Honor, he stands before the Court

21  and he accepts responsibility not just by his guilty plea but

22  by his conduct in paying the money that he's paid already,

23  $225,000, agreeing to pay another $150,000, and by his words

24  as indicated in his letter to the Court, and I tell you this

25  because I've spent a lot of time with the family and I know

1    the family, Mr. Dorzortsev, for many years.  He has been in

2    jail for 20 months.  The positive of that is the recognition

3    of how serious his mistakes were in his life in committing

4    these crimes to get here today, that his mother has a nervous

5    condition that can't be diagnosed.  He's put her in peril.

6    This is a good father and a good husband.  Here is what he's

7    done.

8              As he recognizes and reflects, his younger son is

9    12 years old.  He has had to see a psychiatrist.

10             THE COURT:  It's terrible.  You would think that he

11   would have thought about these possible consequences before he

12   engaged in this criminal conduct.

13             Let me identify for the record because this has a

14   little bit of a public aspect to it since all these folks from

15   the community came here.  They really are entitled to know

16   fully what goes on in the judge's mind before sentence is

17   imposed.

18             I want to acknowledge that when I get letters from

19   public officials I note them on the record.  You have pointed

20   out, Mr. Wolf, a few of these.

21             But Alec Brook-Krasny, member of the Assembly, does

22   speak very favorably about the father, Eugene Dorzortsev.  So

23   to Mr. Dorzortsev's credit, apparently he has been an

24   outstanding member of the community.  Unfortunately, his son,

25   the apple in this particular case fell far away from the tree.

1   But as Mr. Tiscione points out, that these complimentary

2   letters of public officials really are focused more upon his

3   father than upon him.

4         Carl Kruger, member of the Senate, talks

5   specifically about the fact that he has been acquainted with

6   the Dorzortsev family for a number of years and he talks

7   strongly about, once again, Eugene, the father.  He mentioned

8   the family in passing but his focus is upon Eugene Dorzortsev

9   once again.

10        Last, but not least, Borough President Marty

11  Markowitz has written a letter where he talks about the fact

12  that he has the privilege of knowing Mr. Eugene Dorzortsev for

13  a number of years and he speaks so highly of Mr. Dorzortsev,

14  his level of commitment to his family and to his community.

15        But we are not talking specifically about the

16  defendant here.  They are talking about his father.  So I

17  think that we should recognize that there are these public

18  officials who have sought to submit letters supportive of the

19  defendant but the focus of the letters are upon his family and

20  the defendant has brought some shame upon his family.

21        MR. WOLF:  Your Honor, if I could expand on that?

22  It's all recognized by Mr. Dorzortsev and that's why I say,

23  Your Honor, at 45 years old, he's here because -- and I have

24  no doubt, but the Court will impose sentence, this is it.

25  What he's now put his family through at this age, his home is

1  in foreclosure.  His wife works as best as she can.  There

2  hasn't been a payment made --

3         THE COURT:  He's got obviously some support from his

4  family financially as well as otherwise.  His father is still

5  in business.  The family is still in business.  Realistically

6  speaking, there is money there to help him out.

7         MR. WOLF:  Your Honor, that's -- that brings me to

8  an additional point, I think a very significant factor of why

9  the Court should recognize that the good side of the family,

10  the strength of the family, the strength of the father and the

11  community, is that when Mr. Dorzortsev gets out of prison, he

12  has the support of the family.  He has the recognition of the

13  community.  He has done, as Your Honor has read in letters

14  directed about Mr. Dorzortsev, from very impressive people,

15  authors, journalists, community leaders, the Russian-American

16  community --

17         THE COURT:  They speak on behalf of the family.

18         MR. WOLF:  No.  These letters speak about

19  Mr. Dorzortsev, Your Honor.

20         THE COURT:  Show me one letter that speaks well of

21  him specifically.

22         MR. WOLF:  If you look at, Your Honor, Exhibit N.

23         THE COURT:  N?

24         MR. WOLF:  I'm sorry.  Excuse me.  Exhibit R.  I'm

25  sorry.

1      Exhibit R is a letter from Michael Khanaan.  He's

2  the President of Russian Business Communications.

3      THE COURT:  I will take a look at it again.

4      MR. WOLF:  He speaks about --

5      THE COURT:  He came from the totalitarian Soviet

6  Union.  I know that.  He speaks well of the Russian

7  immigrants, which is a wonderful thing.  My mother was a

8  Russian immigrant so I am positively disposed to people from

9  Russia.

10      Yes, you are right.  He talks about the fact that he

11  was part of his father's business, the liquor business.

12      MR. WOLF:  Your Honor, if you look at Exhibit M, a

13  letter from Gregory Davidson, President of Davidson Media, who

14  speaks about Mr. Dorzortsev's finding the time to attend their

15  events and cooperate with community problems.

16      THE COURT:  I have read that.  I am carefully

17  considering all of this.

18      What else do you want to call my attention to?

19      MR. WOLF:  Your Honor, Exhibit O, which is the

20  letter from George Anastassov, the surgeon, who speaks about

21  Nickey and speaks in -- specifically about his charitable and

22  philanthropic efforts with regard to an orphanage in the

23  Ukraine.

24      THE COURT:  We are having a full discussion about

25  all of the characteristics of the defendant.  That's what

1    want to do.

2           Anything else?

3           MR. WOLF:  I emphasize all of that as the side that

4    will -- the situation that will exist when Mr. Dorzortsev is

5    released from prison.  That's a good support system.  He does

6    have the qualities on one side separate from the serious

7    mistake.

8           THE COURT:  Tell me a little bit more about this

9    healthcare.  I guess I have to for the nicety of the law tack

10   on some consecutive sentence.  I have to carve them out some

11   way.  You may want to speak to that.

12          Should I put ten months consecutive for the

13   healthcare fraud?  What kind of healthcare fraud was this?

14   They received medical benefits they weren't entitled to?  I am

15   not clear about that.

16          MR. TISCIONE:  Your Honor, the defendant despite

17   making a considerable amount of money, both legitimately and

18   illegitimately, was receiving tens of thousands of dollars of

19   Medicaid benefits by submitting false affidavits, misstating

20   his income.

21          THE COURT:  What were the nature of these benefits?

22   His stating his health condition?

23          MR. TISCIONE:  No.  The defendant didn't qualify for

24   Medicaid.  He was making way too much money.  He had way too

25   many assets.  He lied to Medicaid in order to receive Medicaid

1    benefits, basically saying that he wasn't making any money and

2    didn't have any assets.

3            THE COURT:  I guess I am a little confused.  You get

4    Medicaid benefits when you are ill, right?

5            MR. TISCIONE:  You get Medicaid benefits when you

6    can't afford to have your own health insurance.

7            THE COURT:  So he was basically not entitled to

8    health insurance on his own so he submitted bills, doctor

9    bills?

10            MR. TISCIONE:  Yes.  He submitted -- for the course

11    of several years, all of the medical care he received was

12    billed to Medicaid, and in total Medicaid lost about

13    80-some-odd-thousand-dollars.

14            THE COURT:  I understand that.

15            There is a restitution order that has to be given

16    here in that amount as well?

17            MR. TISCIONE:  There is.

18            THE COURT:  The $80,000?

19            MR. TISCIONE:  He has actually agreed to pay that

20    amount as part of the forfeiture.

21            THE COURT:  So there is no need for restitution.

22            MR. TISCIONE:  There is no need for additional

23    restitution, correct.

24            THE COURT:  It will be subsumed as part of the

25    forfeiture.  There is no additional restitution.  Is that your

1   position?

2          MR. TISCIONE:  Yes, Your Honor.

3          MR. WOLF:  Your Honor, the $225,000 already paid and

4   the $150,000 that will be paid, in that number includes in

5   total 100 percent repayment of the Medicaid monies, $80,000.

6          THE COURT:  I am troubled to what extent under

7   3553(a) in terms of his personal characteristics can I or

8   should I consider the fact that he came to this country, swore

9   an oath to comply with the law and sort of didn't become a

10  wonderful citizen.  Do you think that reflects upon his

11  personal characteristics?

12         MR. WOLF:  Your Honor, it certainly does on the one

13  hand.  On the other hand, I focus on a sentence imposed under

14  3553 that's no more than sufficient to satisfy what Your Honor

15  is speaking about and the crimes to which he's pled guilty and

16  the conduct and I submit, Your Honor, that a sentence of

17  51 months is sufficient to satisfy 3553 and all of its

18  factors.

19         THE COURT:  I have this requirement to sentence him

20  consecutively on the healthcare count, right?

21         MR. WOLF:  Your Honor, I don't know if it is

22  required.  I think the parties agree that a 51 to 63 month

23  range should be the total sentence imposed.

24         THE COURT:  Mr. Tiscione, I don't want to violate

25  the law here.  Am I required by law to have consecutive

34

1   sentences imposed here of some sort?

2        MR. TISCIONE:  Your Honor, the Probation

3   recommendation does state that there is a condition to impose

4   a consecutive sentence with respect to healthcare fraud.  I

5   believe that that actually is correct.

6        However, there is no requirement -- there is no

7   mandatory minimums or anything like that.  So that requirement

8   can be met if Your Honor fashions, for instance, a total

9   sentence of 63 months and apportions three months to

10  healthcare fraud.

11       THE COURT:  There has to be some apportionment?

12       MR. TISCIONE:  Yes.

13       It can be as little as one day.

14       THE COURT:  I wanted to make sure we are clear on

15  the law.

16       MR. WOLF:  Your Honor, my request would be, of

17  course, that considering the healthcare fraud, that the total

18  sentence imposed by the Court is no more than 51 months.

19       THE COURT:  I have your positions.  Unless you want

20  to say anything else, Mr. Wolf, I can let Mr. Dorzortsev

21  speak.

22       MR. WOLF:  The last thing that I would say, Your

23  Honor, and I want to emphasize it because it's the most

24  important thing to be said today under these circumstances, he

25  accepts full responsibility for what he's done.  Going

1    forward, Your Honor, when you consider a sentence, what's

2    going to happen in the future, is the person going to do the

3    right thing, is the amount of time he spent in jail and

4    whatever additional time -- and I submit no more than

5    51 months -- is that sufficient, is he going to be a threat to

6    the community when he gets out?

7              I submit, no.  This is a community that he's done

8    very well for and he doesn't want to let them down and he has.

9    He doesn't want to let his family down.  He has two children

10   in their teens, two by this marriage, 15 and 12.  They are not

11   here.  It's his daughter's birthday today.  It's his wife's

12   birthday on Tuesday.  His oldest son Julien from his first

13   marriage is here.  They need their father, especially, Your

14   Honor, the teenagers.  I have two boys, 17 and 15.  They are

15   very, very tough years and this is a very difficult time.  His

16   mother is sick.  He's likely not to see his grandmother alive

17   again and that's a very close relationship that's borne out by

18   the presentence report.  Fifty-one months is a long period of

19   time.

20             THE COURT:  The money laundering is a million and

21   over.  I have no idea whether it's five million, three

22   million.  It's obviously a considerable amount of money in

23   addition to the one million.

24             MR. TISCIONE:  That is correct, Your Honor.

25             THE COURT:  I don't have to put an exact figure.  We

1    are not just dealing with a million.  We are dealing with

2    substantial sums here.  I think it is fair to say that.

3            Anything else?

4            MR. WOLF:  Your Honor, the -- nothing further.

5            THE COURT:  Mr. Dorzortsev, the --

6            MR. WOLF:  One other thing, if I could point out?

7    It is a request that I would make, Your Honor.

8            As the presentence report indicates and our sentence

9    memorandum, he was born to a different father in the Ukraine

10   who by reason of his alcohol problems, his mother who is here

11   in court today left his father at the age of five.  At the age

12   of nine, of course, he came to this country.

13           THE COURT:  He has been here since he was nine years

14   old.

15           MR. WOLF:  I point that out because, like many

16   alcoholics, that disease is in the genes.  There is no

17   question, as indicated, that Mr. Dorzortsev had his own very

18   serious alcohol problem and I ask the Court to recommend that

19   he be given the RDAP program in the Bureau of Prisons to

20   address that.  It's all over the presentence report and

21   frankly, it's all over his life.  That would be certainly very

22   constructive.

23           THE COURT:  What's the government's position with

24   respect to that?

25           MR. TISCIONE:  I can attest through my own

1    involvement in this case, particularly over wire intercepts

2    for many months, that the defendant certainly does have an

3    alcohol problem.

4            THE COURT:  So we can recommend the program, the

5    Bureau of Prisons program --

6            MR. TISCIONE:  Yes.

7            THE COURT:  -- for dealing with drug problems and

8    alcohol dependent problems.

9            I make that recommendation.

10           As part of his supervised release he should be

11   subject to mental health or alcohol or drug treatment program

12   under the direction of the Probation Department.  Mr. Wolf, do

13   you want that as a condition of his supervised release?

14           MR. WOLF:  Your Honor, yes, I think it would be

15   consistent with the situation, of course.

16           THE COURT:  Anything else?

17           Mr. Dorzortsev, I shared with your counsel, you

18   listened to everything, I am troubled by the fact that you

19   became a citizen of the United States and thereafter you

20   became a criminal.  It troubles me a great deal.

21           What do you have to say about yourself?  You can

22   speak.  You don't have to.

23           THE DEFENDANT:  Your Honor, what can I say?  I'm

24   here, of course, as you know, because I've made very bad

25   decisions, bad mistakes, selfish, very reckless.  Nobody

1    forced me to make those mistakes.  I made them on my own.

2    When I made them I was old enough and had enough life

3    experience that I should have thought about it more carefully

4    and thought of the consequences that were possible.  I still

5    made those mistakes.

6         What bothers me more out of all my mistakes and out

7    of this whole nightmare, Your Honor, I punished people that

8    didn't deserve to be punished, people who I love, who love

9    me -- my parents, my wife, my children, my brother.  In fact,

10   I am very grateful to Your Honor for not sending my brother to

11   jail, giving him probation because my parents, that would have

12   been a final blow to my parents.  All of the doing was mine.

13   All the decisions I made, they were my own.  I take full

14   responsibility for them.  Like I say, nobody ever forced me to

15   make any of them.

16        I can't change what I've done already, Your Honor.

17   I can't go back in time and know what I know now to know then.

18   All I can do is just promise and say that I will never do

19   anything again to hurt my family or hurt the community, people

20   that supported me, and put anybody in a situation, including

21   myself, that I am in now.

22        I'm here today, Your Honor, bringing my apologies to

23   the Court, to the government, to the community, to my family,

24   ready to accept the punishment which you deem necessary to

25   give me.  But, of course, I open my heart and I ask for any

1    leniency that you can afford me.

2           Thank you, Your Honor.

3           THE COURT:  All right.  I am just thinking how to

4    break this down.  I will sentence the defendant to a total of

5    58 months.  I considered all of the factors under 3553(a).  I

6    am not going to identify them again.  I have spoken about them

7    throughout this proceeding.  The record will speak for itself.

8           I consider 58 months to be sufficient but not

9    greater than necessary to meet the ends of sentencing as set

10   forth in the statutory scheme.  I think there has to be some

11   attention specifically focused on setting an example for

12   others to realize that you can't engage in this type of

13   activity.

14          I have to break this down between Count 17, which

15   will be 51 months, and then Count 18.  I don't know why I

16   can't sentence him under Count 18 to simply seven months to

17   run consecutively to the 51 months in Count 17.  I see no

18   reason why I can't do that.

19          MR. TISCIONE:  I don't believe there is any

20   prohibition against that, Your Honor.  That sounds fine.

21          THE COURT:  That's what I will do.  I will make it

22   simple.

23          There is no order of restitution because the

24   government agrees that it is subsumed by the forfeiture.

25          MR. WOLF:  Your Honor, may I just make this request?

1  For a seven month sentence, he won't get any credit because it

2  is less than a year.  You get a twelve month and one day

3  sentence gives you the good time off for that time.  If you

4  would indicate that for --

5          THE COURT:  All right.  I will do 13 months.  That

6  would be consecutive to the 51 months except to the extent

7  that seven months will be considered consecutive.  The rest

8  will be considered concurrent.

9          MR. WOLF:  Your Honor, I think the 13 months need to

10  be consecutive to 45 months to get back to the 58.  I wasn't

11  asking for more time.  I was asking that the Medicaid fraud be

12  13 -- more than a year so he gets good time off for that and

13  then the other --

14          THE COURT:  I am not going to do it.

15  Fifty-one months plus seven months consecutive for purposes of

16  Count 18, for a total of 58 months.

17          There is not going to be any fine here or

18  restitution because of the forfeiture order, which will

19  basically address his financial capacities to pay.

20          There is a $200 special assessment.

21          As to supervised release, there will be three years

22  on each to run concurrent with each other.

23          The defendant has to comply with the forfeiture

24  order which will be part of the judgment.

25          The defendant will not possess a firearm, ammunition

1    or destructive device.  He can't go hunting anymore.  Let him

2    be mindful of that.  No guns.

3            And the defendant will also be subject to an alcohol

4    and/or drug treatment program, either as an inpatient or

5    outpatient person under the supervision of the Probation

6    Department and he will have to pay the costs of such if in

7    fact this type of treatment is deemed necessary by the

8    Probation Department.

9            In addition, I will recommend the Bureau of Prisons

10   considers him for alcohol treatment pursuant to the Bureau of

11   Prisons's program.

12           MR. WOLF:  Your Honor, it's the RDAP program.

13           THE COURT:  The RDAP.

14           MR. WOLF:  Resident Drug --

15           THE COURT:  RDAP I guess is the acronym.

16           MR. WOLF:  Yes.

17           THE COURT:  Last, I want to advise him that even

18   though he waived his right to appeal if I sentence him to a

19   period of 71 months or less, nonetheless, he still has a

20   window of opportunity to appeal any constitutional rights of

21   his that have been violated or anything of a very significant

22   substantial nature and he would have to then file a notice of

23   appeal within ten days after the written judgment to be

24   entered here and perfected within 30 days thereafter unless he

25   gets an extension of time from the proper authorities.

1          I think that covers everything.

2          MR. WOLF:  One more request, Your Honor.  Would you

3     please request that the Bureau of Prisons designate

4     Mr. Dorzortsev to a Fort Dix camp?

5          THE COURT:  I've already recommended that he be

6     considered for the RDAP.  I will let the Bureau of Prisons

7     decide how to handle its own problems that they have in terms

8     of designating people.  I am not going to make that

9     recommendation here.

10          That completes the sentencing.

11          Any open counts?

12          MR. TISCIONE:  Yes, Your Honor.

13          The government moves to dismiss the underlying

14     indictment and open counts in the superseding indictment.

15          THE COURT:  That's granted.

16          Thank you very much for your help.  It has been a

17     long proceeding, but I think we've had an open discussion here

18     which will explain a little bit about the Court's rationale

19     and how I arrived at that sentence.

20          Anything else?

21          MR. TISCIONE:  Thank you, Judge.

22          MR. WOLF:  Thank you.

23          THE DEFENDANT:  Thank you, Your Honor.

24          (Matter concludes.)

25